**Opinion issued August 19, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00673-CV

———————————

## JIM MADDOX PROPERTIES, LLC AND JIM MADDOX, Appellants

## V.

## WEM EQUITY CAPITAL INVESTMENTS, LTD., Appellee

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-02018**

---

## O P I N I O N

Appellants, Jim Maddox Properties, LLC and Jim Maddox (collectively, "Maddox"), appeal the trial court's grant of summary judgment in favor of appellee, WEM Equity Capital Investments, Ltd. ("WEM"), on WEM's breach of contract claim. In three issues, Maddox argues that the trial court erred in granting

WEM's motion for summary judgment because WEM failed to prove that Maddox breached the contract and because WEM failed to prove as a matter of law that it had not waived compliance with the payment terms of the contract.

We affirm.

## Background

Maddox is in the commercial real estate brokerage business. He and William E. McIlwain, the principal of WEM, were friends who frequently played golf together. McIlwain, acting through WEM, agreed to loan Maddox money when Maddox's business took a downturn. At the time WEM made the loan to Maddox, prior to 2011, there was no written agreement between the parties.

Subsequently, in 2012, Maddox completed two commercial property transactions, one on May 21, 2012, and one on June 21, 2012. McIlwain presented Maddox with a Promissory Note ("the Note"). Maddox signed the Note, dated January 1, 2011, on June 25, 2012.

The Note provided that, "[f]or value received, on January 1, 2011," Maddox promised to pay WEM the sum of $159,046.34 and to pay interest at the rate of twelve percent per annum. The Note further provided:

> The principal of and all accrued but unpaid interest on this Promissory Note and Security Agreement (this "Note") shall be payable in full on December 31, 2013. Notwithstanding anything in this Promissory Note to the contrary however, payments will be made periodically by [Maddox] as income is received by [Maddox] per the attached four sheets marked Exhibits A, B, C, and D. [WEM] shall apply all

2

payments from the pending transactions identified in Exhibits A, B, C, and D first to the discharge of accrued interest and any balance shall be applied to the redirection of principal. Payments shall be made within five (5) business days after close of the referenced transactions. Failure to comply with this paragraph shall constitute an event of default.

In addition, the Note provided that, in the event of default, WEM "may declare the entirety of the indebtedness evidenced hereby immediately due and payable without notice" and that "in the event the entirety of this Promissory Note is declared due, interest shall accrue at the lesser of eighteen percent (18%) or the maximum applicable rate allowed by law from such time." The Note also contained provisions regarding payment of attorney's fees, notice, and acceptable methods of payment. Finally, the Note contained a merger clause: "This written Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties."

The Note referenced Exhibits A, B, C, and D. These exhibits provided details regarding transactions after January 1, 2011, that were made subject to the Note and that were pending with Maddox at or around the time the Note was executed on June 25, 2012 ("the Pending Transactions"). Exhibit A listed five Pending Transactions involving Maddox's client CVS Pharmacies, with approximate closing dates ranging from "April-12" to "3rd qtr. 2012" and expected

3

income from those transactions totaling $215,000. Exhibits B, C, and D contained similar information regarding twenty-one other Pending Transactions for Maddox's clients Golden Corral, Staples, and Walgreens.

WEM filed suit against Maddox on January 11, 2013, alleging a cause of action for breach of contract. The original petition alleged that WEM and Maddox "executed a $159,046.34 promissory note" on "January 1, 2011" which required Maddox to pay WEM from the closings of each of the Pending Transactions attached to the Note. WEM alleged that two such transactions closed "before June 30, 2012, but [Maddox] failed to apply the proceeds to the Note or make a single payment under the Note." WEM alleged that this constituted a default under the Note, allowing it to accelerate the maturity of the Note. WEM further alleged that Maddox's "failure to pay is a material breach of contract" that had caused it both direct and consequential damages. WEM also sought attorney's fees under Texas Civil Practice and Remedies Code Chapter 38. Maddox entered a general denial and asserted the affirmative defenses of waiver, estoppel, laches, and failure of consideration.

On April 3, 2013, WEM moved for traditional summary judgment on its breach of contract claim. In its motion, WEM argued that Maddox was in default on the Note "by failing to pay amounts due from commissions received by [Maddox]. [Maddox] defaulted no later than June 30, 2012 when [he] failed to

4

make payments from commissions received." WEM further argued that the Note expressly provided that all payments Maddox received from the Pending Transactions were to be paid to WEM within five days after the transaction closed and were to be applied first to accrued and unpaid interest and then to the outstanding principal balance on the Note. WEM stated that Maddox "closed at least two Pending Transactions prior to June 30, 2012, but [he] failed to apply any of the proceeds to the Note or make a single payment under the Note," thereby defaulting under the terms of the Note. WEM identified two particular transactions: a May 21, 2012 sale of a CVS Pharmacy site, resulting in a $50,000 commission to Maddox, and a June 21, 2012 sale of a Golden Corral site, resulting in a $41,000 commission to Maddox.

With its motion for summary judgment, WEM presented a copy of the Note and its exhibits setting forth the Pending Transactions. WEM also provided McIlwain's affidavit. McIlwain averred that "WEM loaned the principal amount to [Maddox] prior to January 1, 2011. To date, no funds have been paid WEM to satisfy any of the amounts due under the Note." McIlwain also stated that Maddox had received commissions for the May 21, 2012 and June 21, 2012 transactions. McIlwain further averred that the "Note has not been amended, modified or supplemented since its inception. WEM has not orally or in writing amended, modified, supplemented or waived any rights under the Note. WEM has not

consented or allowed [Maddox] to use any monies received by [Maddox] by, through or under the [Pending Transactions]." McIlwain stated that the amount of unpaid principal and accrued interest due and owing as of June 30, 2012, was $190,243; that WEM accelerated the payment due according to the terms of the Note on June 30, 2012; and that, beginning on July 1, 2012, the unpaid balance began to accrue interest at the default rate of eighteen percent. He further averred that, as of March 31, 2013, the amount of unpaid principal and accrued interest due and owing was $217,522 and that the Note continued to accrue interest at a rate of $94 per day.

WEM also supported its motion for summary judgment with portions of Maddox's deposition testimony. Maddox acknowledged entering into the Note with WEM, and he stated that he signed the note on June 25, 2012, and that the Note referenced "the most current sheets [detailing the Pending Transactions]. These sheets are dated 21 March, '12." Maddox agreed that he had made no payments under the Note. He also agreed that he closed a deal related to a CVS Pharmacy on May 21, 2012, and that no portion of the $50,000 commission that he received from that transaction was paid to WEM. He likewise acknowledged that he closed a second transaction related to a Golden Corral restaurant on June 21, 2012, that resulted in a commission of $41,000, none of which was paid to WEM. Maddox also testified in his deposition that, prior to entering into the written Note,

6

he had an oral agreement with McIlwain and WEM. He agreed that the "oral agreement was WEM would loan you these funds, you would pay those funds back, but definitely you would pay them from these pending sheets."

WEM also accompanied its motion for summary judgment with the affidavit of counsel, averring to the work completed on the case and the amount of reasonable and necessary attorney's fees.

Maddox responded to the motion for summary judgment, arguing that, although the Note was dated January 1, 2011, he did not sign it until June 2012, eighteen months later. He further argued that the Note was drafted solely by WEM and that the exhibits containing the Pending Transactions were attached to the Note after he signed it. Maddox stated that the "alleged events of default occurred prior to the signing of the Note." Finally, Maddox argued that WEM waived payment of the sums at the time Maddox received the funds.

Maddox provided his own affidavit with his response to WEM's motion for summary judgment. In his affidavit, Maddox averred that he signed the Note dated January 1, 2011, on June 25, 2012, that the exhibits were not attached when he signed the Note, and that he "can only assume Mr. McIlwain attached [the exhibits] after he signed the Note." He further stated that he had closed two of the Pending Transactions for which he received commissions: a $50,000 commission received on May 12, 2012, and a $41,000 commission that he received on June 21,

7

2012. He further averred, "On the approximate date that I received both of these commissions, both of which were prior to the date I signed the Note, I informed Mr. McIlwain that I had received them and I told him I needed this money to pay my living and business expenses. On both occasions Mr. McIlwain agreed to allow me to keep all the money received from the commissions."

Maddox also provided excerpts from his deposition with his response to WEM's motion for summary judgment. Maddox's deposition testimony established that WEM loaned the funds prior to the preparation of the Note, and Maddox agreed that the Note "dates back to January 1, 2011." Maddox further agreed that the exhibits outlining the Pending Transactions were referenced by the Note, but, he testified, "I had no control over the exhibits that he attached. He [McIlwain] was aware that the two closings had taken place, and that I had not paid him because I needed the money for living expenses." Maddox also agreed that he did not pay WEM "even under [the] oral agreement prior to the Note."

The trial court granted WEM's motion for summary judgment. This appeal followed.

**Motion for Summary Judgment**

Maddox argues that the trial court erred in granting WEM's motion for summary judgment because WEM failed to prove that Maddox breached the contract and because WEM failed to establish as a matter of law that it did not

8

waive compliance with the payment terms of the contract, as required to overcome Maddox's affirmative defense of waiver.

## A. Standard of Review

We review de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a traditional motion for summary judgment, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

"[S]ummary judgments must stand or fall on their own merits, and the nonmovant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). The standards for reviewing a motion for summary judgment are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* at 548–49. Every reasonable inference must

9

be indulged in favor of the nonmovant and any doubt resolved in its favor. *Id.* at 549.

When the plaintiff moves for summary judgment, the plaintiff must conclusively prove all elements of its cause of action as a matter of law. *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 358 (Tex. App.—Dallas 2007, pet. denied) (citing TEX. R. CIV. P. 166a(c)); *see also* TEX. R. CIV. P. 166a(a) (providing that party seeking to recover upon claim may, at any time after adverse party has appeared or answered, move for summary judgment). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 643–44 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982)).

If the movant meets its burden as set out above, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense. *Lunsford Consulting Grp., Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475–76 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830

(Tex. 1994)).  He must come forward with evidence sufficient to raise a genuine issue of material fact on each element of his affirmative defense.  *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).  To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not.  *Fielding*, 289 S.W.3d at 848.  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

## B.    WEM's Motion for Summary Judgment

WEM alleges that Maddox breached the Note by failing to pay the commissions he earned on May 21, 2012, and June 21, 2012, to WEM under the terms of the Note.

A promissory note is a contract evincing an obligation to pay money. *DeClaire v. G & B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App.— Houston [1st Dist.] 2008, no pet.) (citing *Dorsett v. Cross*, 106 S.W.3d 213, 217

(Tex. App.—Houston [1st Dist.] 2003, pet. denied)).  As such, the construction of its terms is controlled by the rules generally applicable to interpreting contracts. *Id.*  Thus, to be entitled to summary judgment on its claim, WEM was required to show, as a matter of law: (1) the existence of a valid contract; (2) its performance or tender of performance; (3) breach of the contract; and (4) damage as a result of the breach.  *See Wincheck v. Am. Express Travel Related Servs., Co.*, 232 S.W.3d 197, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)); *see also Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("To recover on a promissory note, the plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note; and (4) a certain balance is due and owing on the note.").

The elements of a valid contract are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *DeClaire*, 260 S.W.3d at 44 (citing *Prime Prods., Inc.*, 97 S.W.3d at 636).  The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind. *Id.*  The delivery of the note is "made for the purpose of giving effect to the

instrument according to its terms, unless it be shown that by agreement of the parties, including the payee, the delivery was made for some other purpose." *Id.*

Here, both parties agree that WEM loaned money to Maddox pursuant to an oral agreement prior to January 1, 2011. The parties subsequently memorialized this agreement in the Note. As Maddox's own deposition testimony indicates, under the terms of both the original oral agreement and the Note, Maddox was required to repay the loan from WEM from commissions received on the Pending Transactions. The Note contains all the terms of a valid contract in that it provides that Maddox promised to pay WEM $159,046.34 according to the payment provisions stated in the Note, which required Maddox to pay WEM commissions from the Pending Transactions referenced in the Note and attached as exhibits to satisfy this debt. Furthermore, the parties agreed under the express terms of the Note that the Note was effective as of January 1, 2011.

WEM further provided evidence that it performed its obligation under the Note. McIlwain and Maddox, in both his affidavit and deposition testimony, agreed that WEM loaned Maddox $159,046.34. WEM established that Maddox received commissions from two of the Pending Transactions but that he did not make any payment on the Note, thus breaching the terms of the Note. Maddox does not dispute that he received the commissions; nor does he dispute that he did not pay any sums from the commissions to WEM under the terms of the Note.

Finally, WEM established its damages under the terms of the Note to include the entire unpaid principal balance plus accrued and unpaid interest.

Thus, WEM established the existence of the Note—a valid agreement—that was signed by Maddox; its own tender of performance; Maddox's subsequent breach by failing to pay in accordance with the Note's terms; and its damages in the amount of the unpaid principal, interest, and attorney's fees. *See Dorsett*, 389 S.W.3d at 613; *Wincheck*, 232 S.W.3d at 202. We conclude that WEM conclusively proved all elements of its breach of contract claim against Maddox as a matter of law. *See Kyle*, 232 S.W.3d at 358.

We overrule Maddox's issue arguing that WEM failed to conclusively establish that Maddox breached their agreement.

The burden then shifted to Maddox to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty*, 899 S.W.2d at 197. Maddox could defeat WEM's motion for summary judgment by coming forward with evidence sufficient to raise a genuine issue of material fact on one essential element of WEM's claim or on each element of his affirmative defense of waiver, requiring remand for trial. *See id.* (holding that to defeat plaintiff's entitlement to summary judgment, nonmovant must raise material fact issue as to one essential element of plaintiff's claim); *Haskell*, 193 S.W.3d at 95 (holding that defendant

seeking to defeat motion for summary judgment by raising affirmative defense must raise genuine issue of material fact on each element of defense).

### C.   Maddox's Affirmative Defense of Waiver

Maddox argues that he raised a genuine issue of material fact on his affirmative defense of waiver by presenting his own affidavit and deposition testimony that, at the time he received the commissions, McIlwain allowed him to keep the entirety of the commissions to pay personal expenses. WEM argues that the trial court could not consider any of Maddox's evidence regarding the alleged waiver because it was barred by the express language of the Note and by the parol evidence rule.

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003). Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, as here, the question becomes one of law. *Id.* at 156–57.

It is undisputed that Maddox signed the Note memorializing the terms of the parties' agreement on June 25, 2012, after he received the May 21, 2012 and June 21, 2012 commissions. It is likewise undisputed that, under the plain language of the Note, the parties intended that it be effective as of January 1, 2011, and that it cover the Pending Transactions referenced in the Note. The Note also contained a

15

merger clause: "This written Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties."

Even taking as true Maddox's assertion that McIlwain told him to keep the commissions to pay personal expenses, these representations constituted a prior or contemporaneous oral agreement that was merged into the written agreement signed on June 25, 2012, and determined by the parties to have been in effect as of January 1, 2011. The parties agreed that the terms of the Note "may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties," and courts are bound to enforce the express terms of the agreement as agreed to by the parties; thus, Maddox's affidavit and deposition testimony cannot serve to contradict the agreement of the parties as expressed in the contract. *See, e.g.*, *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126–27 (Tex. 2010) ("The parties' intent is governed by what they said in the . . . contract, not by what one side or the other alleges they intended to say but did not."); *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written. . . ."). Thus, the Note itself conclusively refutes Maddox's contentions that WEM intentionally relinquished a known right with respect to commissions on the Pending

Transactions owed to WEM under the express terms of the Note. By seeking the written memorialization of its agreement with Maddox in June 2012 in the form of the Note, WEM demonstrated an intention to enforce the terms of the agreement requiring Maddox to pay WEM commissions received from the Pending Transactions. Therefore, Maddox's affirmative defense of waiver is unavailing.[1] *See Jernigan*, 111 S.W.2d at 156.

We conclude that Maddox failed to raise a genuine issue of material fact regarding his affirmative defense. *See Centeq*, 899 S.W.2d at 197; *Haskell*, 193 S.W.3d at 95. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of WEM on its breach of contract claims. *See Kyle*, 232 S.W.3d at 358.

---

[1] Furthermore, the parol evidence rule prohibits consideration of Maddox's evidence regarding McIlwain's permission for him to keep the entirety of the commissions at issue to pay personal expenses. The parol evidence rule is a rule of substantive law. *DeClaire v. G & B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 45 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "When parties reduce an agreement to writing, the law of parol evidence presumes, in the absence of fraud, accident, or mistake, that any prior or contemporaneous oral or written agreements merged into the written agreement and, therefore, that any provisions not set out in writing were either abandoned before execution of the agreement or, alternatively, were never made and are thus excluded from consideration in interpreting the written agreement." *Id.* (emphasis added). "Evidence that violates the parol evidence rule has no legal effect and 'merely constitutes proof of facts that are immaterial and inoperative.'" *Id.* (quoting *Piper, Stiles & Ladd v. Fid. & Deposit Co.*, 435 S.W.2d 934, 940 (Tex. Civ. App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.)).

17

We overrule Maddox's issue arguing that WEM failed to prove as a matter of law that it had not waived compliance with the payment terms of the contract.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.