Kenny A. **HINTON** and Eloise Hinton, Appellants

v.

**NATIONSTAR MORTGAGE LLC, Appellee**

No. 04-16-00494-CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: August 9, 2017

APPELLANT ATTORNEY: Jeff Small, Law Office of Jeff Small, 12451 Starcrest Drive, Suite 100, San Antonio, TX 78216-2988.

APPELLEE ATTORNEY: Philip Danaher, 14160 North Dallas Parkway, Suite 900, Dallas, TX 75254, Mark Douglas Cronenwett, Mackie Wolf Zientz & Mann, PC, Pacific Center I, 14160 N. Dallas Parkway Ste. 900, Dallas, TX 75254, Daron Janis, Locke Lord LLP, 2200 Ross Ave., Ste. 2800, Dallas, TX 75201-2748, Jeffrey A. Hiller, Cacheaux, Cavazos & Newton, LLP, 333 Convent Street, San Antonio, TX 78205-1348, B. David L. Foster, Locke Lord LLP, 600 Congress Ave., Ste. 2200, Austin, TX 78701-2748.

Sitting: Karen Angelini, Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice

## OPINION

Opinion by: Luz Elena D. Chapa, Justice

After a bench trial, the trial court rendered a judgment declaring that Kenny and Eloise Hinton defaulted on a note and security instrument and awarding Nationstar Mortgage LLC a money judgment to be satisfied from a foreclosure sale of the Hintons' homestead. The trial court also rendered a take-nothing judgment on the Hintons' claims against Nationstar. On appeal, the Hintons argue (1) Nationstar lacked standing and capacity to intervene in the underlying suit; (2) the statute of limitations barred Nationstar's foreclosure action; and (3) Nationstar's lien is invalid under the Texas Constitution. We affirm the trial court's judgment.

### BACKGROUND

In January 2009, the Hintons refinanced their home to obtain a $213,000 loan. The

terms of the loan were governed by a note and security instrument in which the Hintons agreed to make monthly mortgage payments. The security instrument defined "lender" as including any holder of the note, and authorized the lender to foreclose on the lien if the Hintons defaulted on their monthly payments. The lender named on the note and security instrument is Taylor, Bean & Whitaker Mortgage Company (TBW). In 2009, TBW assigned its rights under the note and security instrument to Central Loan Administration & Reporting (Cenlar), which thereafter assigned its rights under the note and security instrument to Ocwen Loan Servicing, LLC.

The Hintons made only six payments in 2009. On January 16, 2010, Ocwen sent the Hintons a notice of default and intent to accelerate. The Hintons did not timely cure the default, and Ocwen accelerated the debt on May 2, 2010. Ocwen sought a judicial foreclosure in June 2010. The Hintons countersued Ocwen, alleging various claims. After filing suit, Ocwen assigned its rights under the note and security instrument to Nationstar, and on March 27, 2014, Nationstar rescinded Ocwen's acceleration of the debt.

Nationstar thereafter accelerated the debt and intervened in the Ocwen–Hinton suit on May 1, 2014. Nationstar alleged it was the current servicer of the Hintons' loan and had the authority to foreclose on the property under the terms of the security instrument. Nationstar sought a judicial foreclosure, as well as the recovery of its attorney's fees and court costs. The Hintons filed an amended pleading alleging breach of contract, a violation of the Texas Constitution, and other claims against Nationstar. The case proceeded to a bench trial and, after closing arguments, the trial court ruled in Nationstar's favor.

The trial court signed a final judgment,[2] and the Hintons now appeal.

## STANDING & CAPACITY

The Hintons argue Nationstar lacked standing and capacity to intervene in the suit. The Hintons contend there is legally and factually insufficient evidence to establish Nationstar had the right to enforce the note at the time it intervened on May 1, 2014. According to the Hintons, the rights to enforce the note on May 1, 2014, belonged to some other entity. The Hintons further contend Nationstar lacked standing to seek a judicial foreclosure because Nationstar is not a holder in due course.

### A. Standing

The Hintons argue Nationstar lacks standing because "Nationstar's evidence was legally and factually insufficient to show it was personally aggrieved at the time it filed suit." For a trial court to have subject matter jurisdiction, the plaintiff must have standing at the time it files suit. *Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied). Generally, "[a] plaintiff has *standing* when it is personally aggrieved." *Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). When, as here, the plaintiff's lack of standing is raised for the first time on appeal, we "must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Nationstar argues it had standing when it filed its original petition in intervention on May 1, 2014, because it received the right to enforce the note and security instrument through an assignment before

---

**2.** The Hintons nonsuited their claims against Ocwen with prejudice.

intervening. Nationstar alleged in its original petition in intervention that the Hintons executed a note and security instrument to obtain a home equity loan; executed a note and security instrument, agreeing to make monthly payments; and failed to make the payments as required by the note and security instrument. Nationstar further alleged the note and security instrument provide in the event the Hintons failed to make required payments, the lender may enforce the security instrument by selling the property in accordance with the provisions set out in the agreement. Nationstar also alleged it was the current servicer of the Hintons' loan.

 "A promissory note is a contract evincing an obligation to pay money." *Jim Maddox Props., LLC v. WEM Equity Capital Invs., Ltd.*, 446 S.W.3d 126, 132 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Nationstar's original petition in intervention, construed in its favor, alleges the Hintons breached a contract. *See id.* "A plaintiff establishes standing to maintain a breach-of-contract action by demonstrating that it has an enforceable interest as a party to the contract, as an assignee of a party, or as a third party beneficiary." *Republic Petroleum LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 430 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

At the bench trial, the trial court admitted the note and the security instrument into evidence. The note obligated the Hintons to make monthly payments to the lender, TBW, from March 1, 2009, to February 1, 2039. The note provided the Hintons would be in default if they failed to make the required payments. The security instrument provided "that Lender's default remedies shall include the most expeditious means of foreclosure available by law." The security instrument defined "lender" as including "any holder of the Note who is entitled to receive payments under the Note."

The parties dispute whether there is any evidence showing Nationstar was assigned the rights under the note and security instrument before Nationstar filed its original petition in intervention on May 1, 2014. Nationstar's representative, Edward Hyne, testified Nationstar acquired the rights under the note and security instrument from Ocwen, which had received the rights from Cenlar, which had received the rights from TBW. Hyne testified Nationstar, as the mortgage servicer, currently holds the note. He also testified Nationstar acquired possession of the note on September 17, 2013. Specifically, Hyne stated Nationstar received the collateral file for the Hintons' loan from Ocwen on September 17, 2013, and explained the "collateral file is the file that contains the original note." Hyne also stated the note was "endorsed in blank," and gave the holder of the note the authority to enforce the note, and the security instrument defined the "lender," which has the right to seek a judicial foreclosure in the event of the Hintons' default, as including any holder of the note.

Although the Hintons argue Nationstar "could not produce a written agreement or any objective evidence showing the transfer of servicing rights or the transfer of lien," we review the entire record to determine if any evidence supports standing. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Hyne's testimony shows Nationstar was the holder of the note and the assignee of TBW's rights under the note and security instrument as of September 17, 2013, which was before Nationstar filed its original petition in intervention on May 1, 2014. Consequently, the record supports Nationstar had standing to sue for judicial foreclosure based on the Hintons' breach of contract when Nationstar filed its origi-

nal petition in intervention. *See Republic Petroleum LLC*, 474 S.W.3d at 430.

■ The Hintons contend Nationstar lacked standing to intervene under the Texas Business & Commerce Code because Nationstar is not a "holder in due course." *See* TEX. BUS. & COM. CODE ANN. § 3.302 (West 2002). However, "[s]tanding to sue can be predicated upon either statutory or common-law authority." *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 252 (Tex. App.—Dallas 2005, no pet.) (citing *Williams v. Lara*, 52 S.W.3d 171, 178-79 (Tex. 2001)). Because we conclude Nationstar had standing to intervene under common-law authority, we need not address whether Nationstar had statutory standing to intervene. *See id.*; *see also* TEX. R. APP. P. 47.1.

**B. Capacity**

■ The Hintons argue Nationstar "lacked the capacity to sue for foreclosure because, at the time [when Nationstar intervened], that legal right belonged to some other entity." A party has capacity "when it has the legal authority to act, regardless of whether [the party] has a justiciable interest in the controversy." *Nootsie, Ltd.*, 925 S.W.2d at 661. Hyne's uncontroverted testimony establishes Nationstar had the legal right and authority under the note and security instrument to sue for foreclosure as early as September 17, 2013, which was before Nationstar intervened. The record therefore establishes Nationstar had the capacity to file its original petition in intervention. *See id.*[3]

STATUTE OF LIMITATIONS

■ The Hintons argue the statute of limitations barred Nationstar from intervening in this suit. In support of their argument, they note Nationstar did not record the transfer of lien "until July 1, 2014, two months after the four-year statute of limitations had run," and Nationstar therefore lacked the capacity or authority on March 27, 2014, to rescind Ocwen's May 1, 2010 acceleration of the debt. The applicable statute of limitations provides, "A person must bring suit for ... the foreclosure of a real property lien not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.035 (West 2002). When, as here, a note contains an optional debt-acceleration clause, "a cause of action for judicial foreclosure accrues when the note holder actually exercises its option to accelerate." *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 885-86 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). It is undisputed that after the Hintons went into default, Ocwen exercised its option to accelerate the debt on May 2, 2010. It is also undisputed that Nationstar filed its original petition in intervention on May 1, 2014, within four years of Ocwen's acceleration.

The Hintons' arguments suggest Nationstar did not effectively "bring suit" for limitations purposes until July 1, 2014, when Nationstar recorded the transfer of the lien. The Hintons consequently assume Nationstar could have "brought suit" within the four-year limitations period only if Nationstar's March 27, 2014 rescission of Ocwen's acceleration was effective. *See Graham v. LNV Corp.*, No. 03-16-00235-CV, 2016 WL 6407306, at *2–5 (Tex. App.—Austin Oct. 26, 2016, pet. denied) (explaining statute of limitations does not bar foreclosure action filed after four years after acceleration if acceleration is rescinded, a cause of action again accrues through

---

3. The Hintons argue Nationstar lacked capacity or authority to rescind Ocwen's acceleration of the debt and they never received no-

tice of Nationstar's notice of acceleration. We address this argument when addressing the Hintons' statute of limitations issue.

a default and acceleration, and the foreclosure action is filed within four years of the subsequent acceleration). As previously noted, the record supports Nationstar was assigned TBW's rights under the note and security instrument on September 17, 2013, before Nationstar intervened. Moreover, it is undisputed that Ocwen accelerated the debt on May 2, 2010, and Nationstar filed its original petition in intervention on May 1, 2014. Because Nationstar's May 1, 2014 filing was not later than four years after Ocwen's May 2, 2010 acceleration of the debt, the statute of limitations did not bar Nationstar's suit for foreclosure, regardless of whether Nationstar's rescission of Ocwen's acceleration was effective.

## VALIDITY OF LIEN

The Hintons argue the lien on their homestead is invalid under two provisions of article 16 of the Texas Constitution: section 50(a)(6)(M)(ii) and section 50(a)(6)(Q)(v). Nationstar argues the Hintons did not plead the lien was invalid under section 50(a)(6)(Q)(v) and the issue was not tried by consent. After a bench trial, a trial court may not consider a claim for affirmative relief or an affirmative defense unless it is pled or tried by consent. *Simpson v. Curtis*, 351 S.W.3d 374, 380 (Tex. App.—Tyler 2010, no pet.). We construe pleadings liberally in favor of the pleader when, as here, the opposing party does not file special exceptions. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). We will uphold the pleadings as to any claim or affirmative defense that may be reasonably inferred from what is specifically stated, even if an element is not specifically alleged. *See id.* "Trial by consent is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unplead[ed] issue." *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.).

On appeal, the Hintons argue the lien is invalid because they "never received copies of the documents they signed at closing, no appraisal was done and they never received a copy of the supposed appraisal for which they paid $350.00." They contend the lien is therefore invalid under section 50(a)(6)(Q)(v) of the Texas Constitution. The Hintons' live pleading in the trial court does not allege they did not receive copies of the closing documents or the appraisal. They pled the lien was invalid under the Texas Constitution because Nationstar did not resolve their complaint about misstating the escrow amount within sixty days. The Hintons also failed to present evidence at trial showing they did not receive copies of the closing documents or appraisal. On appeal, the only evidence the Hintons cite in support of their contention is Kenny Hinton's affidavit, which was filed with the Hintons' motion for new trial. Furthermore, the Hintons did not argue at trial that the lien was invalid because they did not receive copies of closing documents or the appraisal. We hold the Hintons did not plead the lien violates section 50(a)(6)(Q)(v) and the issue was not tried by consent. *See Simpson*, 351 S.W.3d at 380; *Mastin*, 70 S.W.3d at 154. Thus, the trial court was not permitted to consider the Hintons' issue under section 50(a)(6)(Q)(v). *See Simpson*, 351 S.W.3d at 380.

The Hintons argue that under section 50(a)(6)(M)(ii) of the Texas Constitution, Nationstar's lien is invalid because the original lender, TBW, misrepresented the estimated monthly payments. At trial, Kenny Hinton testified the Hintons' homestead was taxed as two separate lots and the closing documents misrepresented the estimated monthly payments because TBW failed to include estimated taxes for one of the two lots. Section 50(a)(6)(M)(ii) provides:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for an extension of credit that is closed not before one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing.

TEX. CONST. art. XVI, § 50(a)(6)(M)(ii) (formatting modified). Nationstar argues this provision does not bar its foreclosure action due to TBW's misrepresentation of the estimated property tax and estimated monthly payments because estimated property taxes and estimated monthly payments based thereon are not "charged at closing."

We construe provisions of the Texas Constitution to give effect to the makers' and adopters' intent. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). We heavily rely on the constitution's literal text and give effect to the constitutional provisions' plain language. *Id.* "We presume the constitution's language was carefully selected, and we interpret words as they are generally understood." *Id.*

Because the Texas Constitution does not define "charged" or "closing," we may look to dictionaries to discern the meaning of the words. *See id.* at 481–82; *see also Sommers v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 751–58, Nos. 15-0847 & 15-0848, 2017 WL 2608353, at *1–6 (Tex. June 16, 2017) (citing Black's Law Dictionary,

among others). In this context, to "charge" means "[t]o demand a fee; to bill," and "closing" means:

The final meeting between the parties to a transaction, at which the transaction is consummated; esp., in real estate, the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred.

*See* BLACK'S LAW DICTIONARY 248, 272 (8th ed. 2004).[4] Thus, in this context, the plain language of section 50(a)(6)(M)(ii) does not prohibit a forced sale of a homestead when a homestead owner receives an inaccurate estimate of payments that are not due at closing of the real estate transaction. *See* TEX. CONST. art. XVI, § 50(a)(6)(M)(ii); *Garofolo*, 497 S.W.3d at 477.

The Hintons' issue is limited to TBW's misrepresentation of the Hintons' estimated monthly payments, which misrepresentation resulted from TBW's failure to properly estimate the property taxes for the Hintons' homestead. For the Hinton–TBW transaction, "closing" occurred on January 6, 2009. According to the note, the first monthly payment was due on March 1, 2009, and the Hintons were not asked to make an additional escrow payment until several months after closing. Furthermore, property taxes are assessed by taxing units, and are not "charged at closing" by the lender in a real estate transaction. *See, e.g.,* TEX. TAX CODE ANN. §§ 31.01–.02 (West Supp. 2016) (providing property taxes are assessed by taxing units and "are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year

---

4. Our plain language construction is consistent with the administrative definition of "closing." 7 TEX. ADMIN. CODE § 153.1(3) (defining "closed" or "closing" as "the date when each owner and the spouse of each owner signs the equity loan agreement or the act of signing the equity loan agreement by

each owner and the spouse of each owner"); *accord* TEX. CONST. art. XVI, § 50(u) (providing the legislature may delegate state agencies the power to interpret subsection (a)(6)); TEX. FIN. CODE ANN. § 15.413 (West 2013) (authorizing the Credit Union Commission to issue interpretations of subsection (a)(6)).

following the year in which imposed"). The literal text and plain language of section 50(a)(6)(M)(ii) does not support the Hintons' position that TBW's misrepresentation of the estimated monthly payments and property taxes due before or after closing bars Nationstar's foreclosure action. *See* TEX. CONST. art. XVI, § 50(a)(6)(M)(ii). We therefore hold the Hintons did not establish the lien is invalid under the Texas Constitution.

## CONCLUSION

We affirm the trial court's judgment.