

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00396-CV

———————————————

JEFFREY RAY GROOMS, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF EVELYN CHRISTINE GROOMS, DECEASED; JEFFREY RAY GROOMS, INDIVIDUALLY; PAULA GROOMS DAVIS AND MICHAEL GROOMS, Appellants

V.

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AS TRUSTEE FOR MORTGAGE ASSETS MANAGEMENT SERIES I TRUST, AND COMPU-LINK CORPORATION D/B/A CELINK, Appellees

---

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 2018-PR02471-1-A

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

This case centers on a reverse mortgage entered into by Decedent Evelyn Christine Grooms. The reverse mortgage encumbered Decedent's homestead (the Property), which Decedent co-owned with her late husband's three children, Appellants Jeffrey Ray Grooms, Paula Grooms Davis, and Michael Grooms (the Children).

Following Decedent's death, the mortgage holder and mortgage servicer— Appellees The Bank of New York Mellon Trust Company, N.A. as Trustee for Mortgage Assets Management Series I Trust, and Compu-Link Corporation d/b/a Celink[1] (together, the Bank)—gave notice that the reverse mortgage was in default. Decedent's Estate (acting through Jeffrey Grooms in his capacity as Independent Administrator) claimed that the reverse mortgage was invalid, and it filed suit against the Bank for violations of the Texas Debt Collection Act (TDCA)[2] while also seeking a declaration that the lien was "not foreclosure-eligible" due to noncompliance with Texas Constitution Article XVI, Section 50. The Bank sought declaratory judgment to the contrary along with, among other things, an order of foreclosure against the Estate and the Children.

---

[1]According to Compu-Link, although it previously serviced the mortgage, the current servicer is PHH Mortgage Services.

[2]*See* Tex. Fin. Code Ann. ch. 392.

The trial court granted two summary judgments in the Bank's favor: (1) a no-evidence summary judgment on the Estate's TDCA claims and (2) a traditional summary judgment finding that the Bank had conclusively established that the reverse mortgage complied with the Texas Constitution and ordering foreclosure. We will affirm the first summary judgment and reverse and remand the second.

## I. Background

Decedent and her husband owned the Property, and when Decedent's husband died intestate in 2001, he left behind three Children: a son he shared with Decedent—Jeffrey—and two children from a prior marriage—Paula and Michael.[3] Decedent continued living on the Property after her husband's death, and in 2006, she entered into a reverse mortgage eventually held and serviced by the Bank. When Decedent took out the reverse mortgage, she averred that she was "the owner of the Property" and that "[n]o one ha[d] ever questioned or disputed [her] ownership of the [P]roperty." She alone signed the reverse-mortgage documentation—the loan agreement, adjustable-rate note, and deed of trust—and that documentation made no mention of any co-owners.

---

[3]*Cf.* Tex. Est. Code Ann. § 201.003(c) ("If the deceased spouse is survived by a child or other descendant who is not also a child or other descendant of the surviving spouse, the deceased spouse's undivided one-half interest in the community estate passes to the deceased spouse's children or other descendants.").

When Decedent died intestate, the Bank mailed notices of default to her Estate,[4] and the Estate filed suit. As relevant here, the Estate asserted claims (1) for violations of the TDCA, and (2) for a declaratory judgment that the lien was "invalid" and "not foreclosure-eligible" under Texas Constitution Article XVI, Section 50(k)(1). The Estate explained that the reverse mortgage did not attach to the homestead because the Bank "failed to comply with its obligations under the Texas Constitution in providing an extension of credit that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse." *See* Tex. Const. art. XVI, § 50(k)(1).

Initially, the Bank denied that the Children co-owned the Property. Later, though, the Bank amended its pleadings to allege that "[Decedent had] misrepresented the title ownership of the Property . . . by holding herself out to be the sole owner of the Property" when she took out the reverse mortgage. The Bank filed counterclaims against the Estate and third-party claims against the Children[5] seeking

---

[4]The reverse mortgage provided that the Bank could require immediate payment in full upon the death of the borrower.

[5]The Bank filed third-party claims against the Children while the case was removed to federal court. The Children filed answers in federal court, listing the Estate's attorney as their counsel as well. But when the case was remanded to state court, the Children did not participate in the litigation. Through the Estate's attorney, they explained that they did not believe themselves to be parties to the state-court proceedings. The Bank disagreed; it provided the state court with copies of many of the federal pleadings, and it asked the trial court to give effect to those pleadings.

4

to recover for, *inter alia*, (1) a declaratory judgment that the lien was valid and superior to the Children's interests and (2) foreclosure.[6]

The Bank moved for both traditional and no-evidence summary judgment on the Estate's TDCA claims, and the trial court granted the motion on no-evidence grounds. The Bank then filed motions for traditional summary judgment on (1) the Estate's declaratory judgment claim regarding the reverse mortgage's compliance with the consent requirements in Texas Constitution Article XVI, Section 50; and (2) the Bank's foreclosure claim.[7] The trial court granted the motions and ordered

Consequently, on appeal, the Children argue that the trial court lacked personal jurisdiction over them. Our resolution of this appeal moots this issue, though. *See* Tex. R. Civ. P. 123 ("Where the judgment is reversed on appeal . . . for the want of service, or because of defective service of process, no new citation shall be issued or served, but the defendant shall be presumed to have entered his appearance . . . ."); *In re E.R.*, 385 S.W.3d 552, 569 n.33 (Tex. 2012) (reversing judgment for ineffective service and noting that, "[o]n remand, [the appellant] need not be served with citation, as she is presumed to have now entered an appearance"); *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965) (similar); *Whiskeman v. Lama*, 847 S.W.2d 327, 330 (Tex. App.—El Paso 1993, no writ) (reversing default judgment and noting that, "by filing this appeal . . . , [the appellant] entered a general appearance in this cause, thus submitting to the personal jurisdiction of the trial court."); *see also* Tex. R. App. P. 47.1.

[6]The Bank also pleaded claims against the Estate for (1) common law fraud; (2) fraud by nondisclosure; (3) breach of warranty of title; and (4) suit on a note. And it pleaded claims against both the Estate and the Children for (1) equitable subrogation; (2) a declaration that the Bank was a bona fide mortgagee; and (3) trespass to try title.

[7]The Bank filed two separate summary judgment motions: one against Paula and Michael and another against Jeffrey Grooms and the Estate. In its motion against Paula and Michael, the Bank sought a no-evidence summary judgment based on the

5

foreclosure of the Property.[8]  It issued a take-nothing judgment on the Estate's claims, and it dismissed all of the Bank's remaining claims as "moot."[9]

The Estate and Children appeal, challenging the two summary judgments.

## II.  Standard of Review

When a party files a no-evidence motion for summary judgment, the initial burden on the movant is relatively low.  The movant need only assert that there is no evidence of one or more specified elements of a claim or defense on which the adverse party bears the burden of proof at trial.  *Draughon v. Johnson*, 631 S.W.3d 81, 88 (Tex. 2021); *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see* Tex. R. Civ. P. 166a(i).  The burden then shifts to the nonmovant, and the no-evidence motion must

---

alleged lack of evidence that Paula and Michael had not consented to the lien, and it sought traditional summary judgment (1) that Paula and Michael had consented to the lien and (2) for foreclosure.  The trial court ruled on this motion at the same time it ruled on the Bank's motion for summary judgment against Jeffrey and the Estate.  So when the trial court granted traditional summary judgment dismissing the Estate's consent-related declaratory judgment claim and ordering foreclosure, it also denied the consent-related motions against Paula and Michael as "moot."

[8]On our initial review of the record, we questioned the judgment's finality and abated the appeal for clarification from the trial court.  *See* Abatement Order, *Grooms v. Bank of N.Y. Mellon Tr. Co., N.A. ex rel. Mortg. Assets Mgmt. Series I Tr.*, No. 02-22-00396-CV, (Tex. App.—Fort Worth Apr. 18, 2023).  The trial court entered an amended final judgment clarifying and confirming the finality of its ruling.

[9]The claims dismissed as moot included the Bank's claims against the Children for equitable subrogation and for a declaration that the Bank was a bona fide mortgagee, and the Bank's claims against the Estate for fraud, fraud by nondisclosure, equitable subrogation, a declaration that it was a bona fide mortgagee, breach of warranty of title, and suit on a note.

be granted unless the nonmovant brings forth more than a scintilla of probative evidence raising a genuine issue of material fact on the challenged elements. *Draughon*, 631 S.W.3d at 88; *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *see* Tex. R. Civ. P. 166a(i).

A party moving for traditional summary judgment bears a heavier burden, though. For a defendant to obtain traditional summary judgment on a plaintiff's claim, the defendant must conclusively negate at least one essential element of the plaintiff's cause of action. *Painter*, 561 S.W.3d at 130; *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). And, conversely, a plaintiff moving for traditional summary judgment on its own claim must conclusively prove all essential elements of that claim. *See* Tex. R. Civ. P. 166a(a), (c); *Draughon*, 631 S.W.3d at 87–88.

In either case—a no-evidence summary judgment or a traditional summary judgment—the question on appeal is whether a fact issue exists. Tex. R. Civ. P. 166a(c), (i); *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). And in both situations, our review is de novo. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 218 (Tex. 2022); *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, disregarding evidence contrary to the nonmovant unless reasonable jurors could not, and indulging

every reasonable inference in the nonmovant's favor. *Zive*, 644 S.W.3d at 173; *Sudan*, 199 S.W.3d at 292.

## III. Discussion

The Estate and the Children raise ten summary judgment challenges, many of which overlap.[10] To simplify the analysis, we need address only two of their overarching arguments to resolve this appeal: (1) whether the trial court erred by finding that the Bank had conclusively established that the reverse-mortgage lien was constitutionally valid and, consequently, ordering foreclosure; and (2) whether the trial court erred by finding that there was no evidence of the Estate's TDCA claims and ordering that the Estate take nothing on those claims.

---

[10]The Estate and Children assert that "[t]he sole issue on appeal is whether the trial court properly granted summary judgment" but explain that this issue "implicates" ten questions: whether the trial court erred by (1) "considering federal pleadings . . . as having survived remand"; (2) "taking judicial notice of . . . federal pleadings"; (3) "exercising jurisdiction over . . . [the Children] (individually)"; (4) "entering summary judgment against . . . [the Children] (individually) absent their appearance"; (5) "determining that all of the owners consented to the reverse mortgage"; (6) "ordering that [the Estate] takes nothing on his claims"; (7) failing to "find the lien securing the reverse mortgage was void"; (8) "overruling objections to the [Bank's] summary judgment evidence"; (9) "finding that the [Bank] had a first party lien and the lien was eligible for foreclosure"; and (10) "awarding more relief in the Final Summary Judgment than [wa]s supported by the pleadings and evidence." Our resolution of issues five, six, seven, nine, and ten renders the remaining issues moot. *See* Tex. R. App. P. 47.1.

## A. Error: Declaratory Judgment and Foreclosure Claims

First, the Estate and Children argue that the trial court erred by declaring the Bank's lien constitutionally valid and entering a foreclosure judgment against them on that basis. They claim that the Bank failed to present conclusive evidence of compliance with the Texas Constitution's consent requirements and thus the trial court granted more relief than the evidence supported. We agree.

### 1. Governing Law

The Texas Constitution generally protects a homestead from forced sale for the payment of debts unless an exception applies. Tex. Const. art. XVI, § 50(a). One such exception is a reverse mortgage. *Id.* art. XVI, § 50(a)(7). A "[r]everse mortgage" is defined as "an extension of credit . . . that[, among other things,] is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse." *Id.* art. XVI, § 50(k)(1). If a lien purporting to be a reverse mortgage does not meet this constitutional definition of a reverse mortgage, then such noncompliance serves as a defense to foreclosure of the homestead.[11] *Kyle v. Strasburger*, 522 S.W.3d 461, 465, 465–66 (Tex. 2017); *see Garofolo*

---

[11]"[T]he prevailing view among both Texas and federal courts is that a challenge to the validity of a lien based on constitutional non-compliance is similar in nature to an affirmative defense." *Tong v. Nationstar Mortg. LLC*, No. 05-19-01558-CV, 2023 WL 2422482, at *8 (Tex. App.—Dallas Mar. 9, 2023, pet. filed) (mem. op. on reh'g) (quoting *Kingman Holdings, LLC ex rel. Briar Oak 223 Land Tr. v. Nationstar Mortg. LLC*, No. 05-21-00075-CV, 2022 WL 2255726, at *2 (Tex. App.—Dallas June 23, 2022, no pet.) (mem. op.)); *see Priester v. Deutsche Bank Nat'l Tr. Co.*, 832 Fed. App'x

240, 248–49 (5th Cir. 2020) (per curiam); *Livingston v. U.S. Bank Nat'l Ass'n*, No. 02-19-00185-CV, 2020 WL 1646741, at \*2 (Tex. App.—Fort Worth Apr. 2, 2020, no pet.) (mem. op.); *Hinton v. Nationstar Mortg. LLC*, 533 S.W.3d 44, 50 (Tex. App.—San Antonio 2017, no pet.); *Wilson v. Aames Cap. Corp.*, No. 14-06-00524-CV, 2007 WL 3072054, at \*1 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.).

But while "similar in nature" to an affirmative defense, constitutional noncompliance is not a method of avoidance. *See Lander v. Bank of N. Y. Mellon ex rel. Certificateholders CWABS, Inc. Asset-Backed Certificates Series 2006-23*, No. 13-20-00466-CV, 2022 WL 551151, at \*5 (Tex. App.—Corpus Christi–Edinburg Feb. 24, 2022, pet. denied) (concluding that borrower's "assertion that the lien [wa]s invalid d[id] not fall squarely within the common-law concepts of affirmative defenses or matters of avoidance"); *cf. Campbell v. Pompa*, 585 S.W.3d 561, 569 (Tex. App.—Fort Worth 2019, pet. denied) (noting that the terms "avoidance" and "affirmative defense" are often used interchangeably and that they generally involve facts or arguments that will defeat the plaintiff's claim even if the plaintiff's allegations are true).  Rather, a homestead lien's constitutional noncompliance "tend[s] to rebut the factual propositions asserted in the plaintiff's case"—namely, the validity of the lien on which the plaintiff relies for foreclosure.  *See Campbell*, 585 S.W.3d at 569 (noting that avoidance defenses do not "operate[] by 'tend[ing] to rebut the factual propositions asserted in the plaintiff's case'" (quoting *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991) (op. on reh'g))).

Several of our sister courts have thus concluded that, although a lender is generally not required to demonstrate constitutional compliance to prevail on a foreclosure summary judgment, a lender moving for traditional summary judgment on foreclosure is required to address the compliance issues that an owner has raised in its live pleadings.  *Lander*, 2022 WL 551151, at \*4–6; *see Alexander v. Am. Home Mortg. Servicing, Inc.*, No. 04-16-00788-CV, 2017 WL 4014626, at \*3 (Tex. App.—San Antonio Sep. 13, 2017, pet. denied) (mem. op.); *cf. Draughon*, 631 S.W.3d at 89–92 ("distin[guishing] between pleas by the non-movant which challenge the existence of limitations, such as [the tolling statute], and those which do not challenge the limitations defense, but are affirmative defenses in the nature of confession and avoidance" and noting that, although the plaintiff bears the burden on both at trial, for the former, a defendant seeking summary judgment on limitations grounds bears the burden to negate the pleaded rule or provision (quoting *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975))).

*v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 479 (Tex. 2016) ("Section 50(a) simply has no applicability outside foreclosure.").

### 2. Bank's Motion and Evidence

The constitutional-compliance issue was intertwined with several of the parties' causes of action—the Estate sought a declaratory judgment that the reverse mortgage lacked the constitutionally required consent, and it also raised the issue as a defense to the Bank's foreclosure claim.[12]  The Bank moved for traditional summary judgment on both the declaratory judgment and foreclosure claims, pointing to evidence that "the consent of all owners of the Property was obtained and the lien [wa]s valid."  As the movant, the Bank bore the burden to prove that it was entitled to judgment on these claims as a matter of law.  Tex. R. Civ. P. 166a(c); *see Mosaic Baybrook One, L.P. v.*

---

We need not weigh in on this issue, though, because the Estate pleaded a declaratory judgment claim based on constitutional noncompliance, and when the Bank moved for traditional summary judgment on that claim, it took on the burden of conclusively disproving such alleged constitutional noncompliance.  *See Frost Nat'l Bank*, 315 S.W.3d at 508–09 ("A defendant who conclusively negates at least one of the essential elements of a cause of action . . . is entitled to summary judgment.").

[12]The Estate listed several defenses and affirmative defenses in its live "petition" rather than amending its answer.  *See* Tex. R. Civ. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."); *Baylor Coll. of Med. v. Tate*, 77 S.W.3d 467, 471 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (recognizing that "the nature of a pleading is determined by its substance, not by its format or caption").

*Simien*, Nos. 19-0612, 21-0159, 2023 WL 3027992, at *12 (Tex. Apr. 21, 2023);

*Draughon*, 631 S.W.3d at 87–88.

The Bank did not prove that it was entitled to judgment as a matter of law because it failed to conclusively establish that the reverse mortgage complied with Texas Constitution Article XVI, Section 50(k)(1). *See* Tex. Const. art. XVI, § 50(k)(1); Tex. R. Civ. P. 166a(c). Rather, the Bank's own pleadings and evidence created a fact issue regarding whether the reverse mortgage had been obtained without the consent of the co-owners and their spouses.[13]

The Bank supported its motions for summary judgment with several reverse-mortgage records—the loan agreement, the adjustable-rate note, and the deed of trust—and none of those records listed any owners or spouses other than Decedent. The documents named Decedent alone as the borrower, they were signed by Decedent alone, and nothing in them acknowledged any other owners or spouses. Meanwhile, the Bank's live pleading alleged that Decedent "misrepresented the title ownership of the Property at the time she signed the Loan Agreement by holding herself out to be the sole owner of the Property." When faced with similar facts, our

---

[13]The Bank filed a motion for summary judgment against Paula and Michael Grooms separate from its motion for summary judgment against the Estate and Jeffrey Grooms, but the motions both focused on the constitutional-compliance and foreclosure issues, and the trial court's amended final judgment clarified that it intended to resolve the two summary judgment motions together.

sister court held that this was more than a scintilla of evidence showing the absence of consent from other owners and their spouses.

In *Nationstar Mortgage LLC v. Barefoot*, Barefoot co-owned a property with her mother and stepfather, each having an undivided one-third interest. 654 S.W.3d 440, 449 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (mem. op.). The stepfather died, passing his property interest to his three children. *Id.* But after the death, the mother purported to quitclaim both her interest and the stepfather's interest to Barefoot. *Id.* Barefoot—who now owned two-thirds of the property interests but believed herself to be the sole owner—took out a home-equity loan. *Id.* at 449–50. The Texas Constitution's consent requirement for foreclose of a home-equity loan is almost identical to its consent requirement for foreclosure of a reverse mortgage—the loan must be "secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse." *Id.* at 451 (emphasis removed) (quoting Tex. Const. art. XVI, § 50(a)(6)(A)); *compare* Tex. Const. art. XVI, § 50(a)(6)(A), *with* Tex. Const. art. XVI, § 50(k)(1). Yet, as Decedent did here, Barefoot executed the home-equity agreement with no mention of her co-owners or their spouses. *Barefoot*, 654 S.W.3d at 450–52. Then, several years later, she took out a second home-equity loan—again, all by herself.[14] *Id.* at 450. "All of the

---

[14]For each of the home-equity loans, the lender issued a title commitment recognizing that Barefoot was not the sole owner, but it closed the transaction anyway. *Barefoot*, 654 S.W.3d at 450.

13

documents . . . provided to Barefoot at the closings indicated that she was the sole owner of the property." *Id.*

When Barefoot defaulted, litigation ensued, and the parties went to trial on Barefoot's claim for a declaration that the lien was invalid. *Id.* The trial court concluded that the two home-equity liens were void because they violated the Texas Constitution, *id.* at 451, and the court of appeals held that there was legally sufficient evidence to support this determination, *id.* at 451–52.

The court of appeals explained that "[i]t [wa]s undisputed that Barefoot was the sole borrower listed on the instruments and the sole signatory to the instruments, even though she was not the sole owner of the property," and "[t]he evidence also show[ed] that Barefoot believed herself to be the sole owner of the property at the time she signed the instruments." *Id.* This was, the court held, "at the very least, some evidence that the co-owners of the property did not consent to the instruments," and based on this, the trial court could have inferred that the "co-owners never knew about Barefoot's home-equity loans, and accordingly had no opportunity to consent (or object) to the instruments."[15] *Id.*; *cf. Tong*, 2023 WL 2422482, at *1–2, *4, *10–12 (holding trial court's forfeiture order based on finding that wife consented to home-equity lien was supported by insufficient evidence when,

---

[15]The *Barefoot* court went on to note that, although the voidness determination had been framed as a declaratory judgment action, it was "properly characterized as a quiet-title claim." *Id.* at 452.

among other things, husband represented on loan documents that he was single, wife did not sign any loan documents, and both spouses testified that husband did not tell wife about loan).

Although the loan, claims, and procedural posture in *Barefoot* are not precisely the same as those in the present case, many of the facts are similar. As in *Barefoot*, only one owner was listed as a borrower on the reverse-mortgage documentation, and only one owner signed that documentation. *See Barefoot*, 654 S.W.3d at 451–52. Apart from Decedent, no other owners or spouses were mentioned in the reverse-mortgage documents. *See id.* The Bank itself explains this omission by asserting that Decedent held herself out as the sole owner of the Property when she executed the reverse mortgage, and the Bank secured deemed admissions from Paula and Michael agreeing to this assertion. *Cf. id.* at 452 (noting that Barefoot "believed herself to be the sole owner" when she executed the documents). So although the Bank attempted to offer evidence showing that the Children had given unwritten[16] consent to the reverse

_____

[16]The Estate and the Children argue that Article XVI, Section 50(k)(1) required the Children and their spouses to consent to the reverse mortgage in writing. We need not address whether such consent was required to be in writing, though, because there was no evidence that the spouses consented at all. Tex. R. App. P. 47.1; *see Tong*, 2023 WL 2422482, at *10 (concluding that court "need not decide whether [wife's] consent was required [by the Texas Constitution] to be in writing because . . . the record contains legally and factually insufficient evidence to support the trial court's finding that [the wife] consented to the [home-equity] lien").

mortgage,[17] such evidence did not conclusively establish the Children's consent in light of the reverse-mortgage documentation. As in *Barefoot*, there was at least some evidence to allow reasonable and fair-minded jurors to conclude that the Children did not (or did not have the opportunity to) consent; the matter was not conclusively proven. *See id.* at 451–52; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) ("If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so.").

Nor did the evidence conclusively establish that the Children's spouses consented to the reverse mortgage.[18] In fact, the Bank's motions for summary judgment made no mention of the Children's spouses at all. And the only portion of the Bank's evidence that even addressed whether the Children were married was a document entitled "list of facts to be proven at trial," which the Estate and Children

---

[17]The Bank offered discovery documents showing that Paula and Michael—by failing to respond to requests for admissions—were deemed to have admitted that they "consented to the [reverse mortgage]," and it offered Jeffrey's deposition testimony regarding his awareness of the reverse mortgage.

[18]In a "Supplemental Brief" filed with this court, the Bank asserts that the Estate and Children lack standing to challenge the Children's spouses' lack of consent. But "[a] void instrument has no effect, even as to persons not parties to it," and "a contention that a document is void under homestead law may be asserted by anyone whose rights are affected by the instrument." *Denmon v. Atlas Leasing, L.L.C.*, 285 S.W.3d 591, 597 (Tex. App.—Dallas 2009, no pet.) (rejecting argument that wife lacked standing to challenge absence of husband's consent to homestead lien); *McGahey v. Ford*, 563 S.W.2d 857, 861 (Tex. App.—Fort Worth 1978, writ ref'd n.r.e.) (holding purchaser had standing to assert that judgment lien never attached to homestead).

had filed in federal court, and which reflected that, at the time the reverse mortgage was executed, two of the Children were married. [Capitalization altered.]

Even when the Estate raised the spousal-consent issue in its summary judgment response, the Bank argued that spousal consent was not raised by the Estate's pleadings. But we beg to differ.[19]

The Estate's live petition recited the constitutional requirement that a foreclosure-eligible reverse mortgage be "created by a written agreement with the consent of each owner and each owner's spouse," Tex. Const. art. XVI, § 50(k)(1), and the Estate sought a declaratory judgment that "this reverse mortgage was not made on the terms and conditions constitutionally required to be a 'reverse mortgage,' and the lien on the homestead is invalid and not foreclosure-eligible unless it meets the terms outlined in Section 50(k)(1) of Article XVI of the Texas Constitution." [Emphasis removed.] Then, a few pages later, the Estate requested a similar "declaration of quiet title," arguing that the Bank "failed to comply with its

---

[19]We noted as much in our abatement order, explaining that "Appellees' traditional summary judgment motion did not address whether the lien was 'created by a written agreement with the consent of . . . each owner's spouse,' nor did it address whether each owner even had a spouse at the time the reverse mortgage was executed. Tex. Const. art. XVI, § 50(k)(1)." *See* Abatement Order at 3 & n.1, *Grooms v. Bank of N.Y. Mellon Tr. Co., N.A. ex rel. Mortg. Assets Mgmt. Series I Tr.*, No. 02-22-00396-CV (Tex. App.—Fort Worth Apr. 18, 2023). Yet, upon abatement, the trial court clarified that it was granting summary judgment on the declaratory action, claiming that "the issue of spousal consent of each owner under Section 50(k)(1) was not properly before the Court because it was not ple[a]d[ed] with specificity and adequate notice of th[e] claim was not provided to Defendants."

17

obligations under the Texas Constitution in providing an extension of credit that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse." [Capitalization altered.] When the Bank moved for summary judgment on the Estate's declaratory judgment claim, it assumed the burden of conclusively disproving these pleaded allegations of noncompliance by establishing that the co-owners and their spouses—whom, according to the Bank, Decedent did not even mention—had consented to the reverse mortgage.

Because there was no evidence that any relevant spouses consented to the reverse mortgage and because the Bank's pleadings and evidence created a fact issue regarding the Children's consent to the reverse mortgage, the trial court erred by finding, as a matter of law, that the reverse mortgage qualified for foreclosure under Texas Constitution Article XVI, Section 50. We sustain the Estate's and the Children's challenges to this erroneous finding,[20] and we reverse the summary judgment premised upon it—the judgment dismissing the Estate's declaratory judgment claim and authorizing the Bank's foreclosure. *See* Tex. R. App. P. 43.2(d); *cf. Tong*, 2023 WL 2422482, at *10–12 (holding that there was legally insufficient

---

[20]The Estate and the Children raise this argument in appellate issues five, seven, nine, and ten of their brief.

evidence to support trial court's finding of spousal consent to home-equity lien and reversing foreclosure order).

## B. No Preservation of Error: Estate's TDCA Claims

The Estate next challenges the summary judgment granted on its TDCA claims.

The Estate pleaded violations of the TDCA, and when the Bank moved for traditional and no-evidence summary judgment on those claims, the trial court granted the motion on no-evidence grounds. Yet, on appeal, the Estate focuses on the legal accuracy of the Bank's grounds for traditional summary judgment. Whether the Bank had legitimate grounds for traditional summary judgment is irrelevant because the trial court did not grant traditional summary judgment; it granted no-evidence summary judgment.[21] *See* Tex. R. Civ. P. 166a(i).

And although the Estate's brief mentions the no-evidence summary judgment, it addresses it in a total of three sentences with no citations to authority and no substantive legal analysis.[22] *Cf.* Tex. R. App. P. 38.1(i) (requiring brief to include a

---

[21]The Bank sought traditional summary judgment by attempting to negate an essential element of the Estate's TDCA claims; namely, whether the Estate was a "consumer" under the TDCA. Meanwhile, it sought a no-evidence summary judgment based on the lack of evidence that the Estate had any TDCA damages.

[22]The entirety of the Estate's three-sentence argument provides:

In their no-evidence motion, Defendants also claimed that "Plaintiff had no evidence of actual damages under the TDCA." In response Plaintiff

19

"clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). "An appellant's failure to cite legal authority [for] or provide substantive analysis of a legal issue presented results in waiver of the appellant's complaint." *Sister Initiative, LLC v. Broughton Maint. Ass'n, Inc.*, No. 02-19-00102-CV, 2020 WL 726785, at *25 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.); *Flores v. James Wood Fin. LLC*, No. 02-13-00022-CV, 2013 WL 3064455, at *1 (Tex. App.—Fort Worth June 20, 2013, no pet.) (mem. op.) (noting further that "we may not perform an independent review of the record and the law to determine if the trial court erred" and to "make a party's arguments for him"); *cf. Rosetta Res. Operating, LP*, 645 S.W.3d at 227–28 (holding court of appeals erred by reversing summary judgment when alternative ground for judgment was inadequately briefed). The Estate has waived its challenge to the no-evidence summary judgment by failing to adequately brief the issue.

---

provided an affidavit from his counsel regarding the excessive amounts of attorney's fees occasioned by Defendants pursuit of a void lien and Plaintiff's need to obtain injunctive relief. Plaintiff noted that damages were outlined in response to requests for disclosure and interrogatories.

In the trial court, the Bank argued that attorney's fees did not constitute damages under the TDCA, but the Estate makes no mention of this argument, nor does it cite any legal authority on the issue.

We overrule this challenge[23] and affirm the TDCA summary judgment. *See* Tex. R. App. P. 43.2(a).

## IV. Conclusion

The trial court did not err by granting a no-evidence summary judgment on the Estate's TDCA claims, and we affirm that judgment. *Id.* But we reverse the traditional summary judgment on the declaratory and foreclosure claims, and we remand those claims for a new trial. *See* Tex. R. App. P. 43.2(d). And because the trial court relied on the latter judgment to order that the Estate take nothing on its remaining claim and to dismiss the Bank's other causes of action as "moot,"[24] we reverse those portions of the judgment for reconsideration as well. *See id.*

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: July 27, 2023

---

[23]The Estate raises this argument in appellate issue six of its brief.

[24]We need not address whether the dismissed claims—the Bank's claims against the Estate for fraud, fraud by nondisclosure, equitable subrogation, a declaration that it was a bona fide mortgagee, breach of warranty of title, and suit on the note, and its claims against the Children for equitable subrogation and a declaration that it was a bona fide mortgagee—were in fact mooted by the trial court's resolution of the declaratory judgment and foreclosure claims.